# EXHIBIT B

# COMPLAINT TO TRANS UNION, LLC

STATE OF MINNESOTA  
COUNTY OF DAKOTA

DISTRICT COURT  
FIRST JUDICIAL DISTRICT  
Case Type: Civil Other/Miscellaneous

Mark Schreiber,

*Plaintiff,*

v.

Equifax Information Services, LLC;  
Experian Information Solutions, Inc.;  
Midland Credit Management, Inc.;  
and TransUnion, LLC;

**COMPLAINT**  
(Jury Trial Demanded)

*Defendants.*

Plaintiff, by and through his attorneys, for his complaint against Defendants upon personal knowledge as to his own facts and conduct and on information and belief as to all other matters, states and alleges as follows:

**Introduction**

Plaintiff's experience with the Defendants is a common phenomenon where a consumer discovers that his credit report contained inaccurate information and despite promptly acting to correct the inaccuracies in accordance with the Federal Consumer Reporting Act and the Federal Fair Debt Collection Practices Act, the consumer's request for reinvestigation from consumer reporting agencies and validation of debt from a collection agency proved to be futile. As a direct result of the inaccurate information, Plaintiff's credit score was negatively impacted ensuring that he would be denied credit on at least one occasion and fully expects to be denied in the future limiting how he utilizes credit and interacts with potential lenders, insures, and service providers.

3

## Statement of Jurisdiction and Venue

1. This Court has Jurisdiction over the subject matter of this action pursuant to Minn. Stat. §484.01, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692k(d) and the presumption of concurrent state court jurisdiction.

2. This Court similarly has original subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act ("FCRA"), which permits consumers to file suit in the courts of their respective states.

3. Venue is proper pursuant to Minn. Stat. §542.09 because the cause of action arose within the State of Minnesota and the County of Dakota.

## Applicable Statutory Law

1. The FCRA's requirements apply to any Credit Reporting Agency ("CRA"), which Section 603(f) defines as:

> "[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

15 U.S.C. § 1681a(f).

2. FCRA Section 603(d) defines a "consumer report" as:

> "[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under Section 604."

15 U.S.C. § 1681a(d).

3.  CRAs that sell consumer reports must comply with the FCRA. FCRA Section 607(b), 15 U.S.C. § 1681e(b), requires a CRA to follow reasonable procedures to assure the maximum possible accuracy of consumer report information.

4.  Section 611 of the FCRA, 15 U.S.C. § 1681i, requires a CRA, upon notice of disputed information, to conduct a reasonable reinvestigation to determine the accuracy of information disputed by a consumer who is the subject of a report.

5.  The same section requires that notice of the reinvestigation be promptly provided to the furnisher of the credit information. If after any reinvestigation an item is found to be inaccurate or cannot be verified, the CRA must promptly delete that item from the file of the consumer

1.  Furnishers of information to CRAs must also comply with certain aspects of the Act. Section 623 of the FCRA, 15 U.S.C. § 1681s-2, addresses the duties of persons who furnish information to the CRAs. This section of the Act prohibits a furnisher from reporting any information to a CRA if the person knows or has reasonable cause to believe that the information is inaccurate.

2.  Organizations with "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another", including law firms, must comply with the FDCPA. FDCPA Section 803, 15 U.S.C. § 15 USC 1692a.

3.  "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This includes the amount or character of the debt. FDCPA Section 807, 15 U.S.C. § 15 USC 1692e.

5

4. "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." FDCPA Section 809, 15 U.S.C. § 15 USC 1692g(b).

5. A debt collector may not "communicat[e] or threate[n] to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." FDCPA Section 807, 15 U.S.C. § 15 USC 1692e(8).

6. "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." This includes adding any amount that is not authorized by law or contract. FDCPA Section 808, 15 U.S.C. § 15 USC 1692f.

**Parties**

4. Plaintiff is an adult resident of the City of Eagan, the County of Dakota, and the State of Minnesota.

5. Defendant, Equifax Information Services, LLC ("Equifax"), is a foreign consumer reporting agency registered in the State of Georgia with a service of process address listed as 2345 Rice Street, Suite 230, Roseville, Minnesota 55113.

6. Defendant, Experian Information Solutions, Inc. ("Experian"), is a nationally recognized consumer reporting agency registered in the state of Ohio, and it has a service of process address listed as 1010 Dale Street North, St. Paul, Minnesota 55117.

7. Defendant, Midland Credit Management, Inc. (Midland Credit), is a collection agency and a furnisher of consumer data to major CRAs, and it is registered in Minnesota with a service of process address listed as 2345 Rice Street, Suite 230, Roseville, Minnesota.

8. Defendant, TransUnion, LLC ("TransUnion"), is a nationally recognized consumer reporting agency registered as a Limited Liability Company in the state of Delaware, and it has a service of process address listed as 2345 Rice Street, Suite 230, Roseville, Minnesota 55113.

9. Plaintiff is informed and believes, and thereon alleges, that at all times Defendants all conducted business in the State of Minnesota and in the County of Dakota.

### Facts Regarding CRA Defendants

1. Plaintiff is an individual "consumer" as defined by 15 U.S.C. § 1679a(1) and § 1681a(c).

2. Equifax, Experian, and TransUnion (collectively, CRA defendants) are consumer reporting agencies as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f) because they are in the business of assembling and analyzing consumer information before selling consumer reports to third parties.

3. CRA defendants prepared and issued consumer reports concerning Plaintiff that included inaccurate and misleading information as to important dates, e.g., opened and last active dates, assigned to his derogatory account with Midland Credit, which are dates that significantly impact the credit score; especially, the last active date, which can make a derogatory account appear more recent than is accurate, and thereby, effectively re-aging the account.

7

4. Various individuals seeking to lend to Plaintiff consulted the consumer reports furnished by CRA defendants containing the false and misleading information at issue.

5. The direct result of the above-referenced consumer reports to potential lenders containing the false and misleading information at issue have caused significant damage to the perceived reputation of Plaintiff and to his ability to borrow money, conduct commerce, and function within modern society.

6. Specifically, the above-referenced credit reports have, to date, prevented Plaintiff from obtaining a home loan and purchasing his dream home.

7. As a direct result of CRA defendants' conduct, Plaintiff has suffered from increased stress, anger, frustration, anxiety and, the loss of the ability to borrow money on favorable terms and thereby loss of a means of improving his social and economic position.

### Facts Regarding Violation of Section 611 of the FCRA
### 15 U.S.C. §1681i

1. Section 611 of the FCRA, 15 U.S.C. § 1681i, requires a CRA upon notice of disputed information to conduct a reasonable reinvestigation to determine the accuracy of the disputed information.

2. Plaintiff submitted disputes and notices of the false and misleading information contained in his credit reports to all the CRA defendants on September 7, 2021.

3. No proper response was received from any of the CRA defendants.

4. That as a direct result of the CRA defendants' failure to reinvestigate and correct the false and misleading information contained in Plaintiff's consumer report, they informed Plaintiff's potential creditors that he was at higher risk for nonpayment of debts and therefore an undesirable credit risk.

5. That as direct result of the CRA defendants' failure to fulfill its statutory duty as CRAs, the Plaintiff further suffered in the form of personal financial loss and loss of standing in the community.

6. That the Plaintiff suffered further harm by incurring legal and professional fees in consulting with various experts regarding the course of action for correcting the errors.

### Facts Regarding Violation of Section 623 of the FCRA
### 15 U.S.C. §1681s-2

1. Section 623 of the FCRA, 15 U.S.C. § 1681s-2, prohibits a furnisher of information to a CRA from furnishing any information relating to a consumer to any CRA if the furnisher knows or has reasonable cause to believe that the information is inaccurate.

2. That Midland Credit furnished not only inaccurate information as to the opened and last active dates of the derogatory account at issue, but inconsistent dates to the CRA defendants.

3. That Midland Credit re-aged the derogatory account at issue; while the last active date furnished to Equifax was July 1, 2020, it reported to Trans Union and Experian that the last active date was August 3, 20201 and March 1, 2021, respectively.

4. That Midland Credit reported the above-referenced inaccurate and inconsistent dates to the Transunion and Experian on the same day on August 3, 2021, and to Equifax on August 1, 2021; at the most, just 2 days apart.

5. That Midland furnished not just inaccurate and inconsistent dates, but also furnished inconsistent information on the past due amount.

6. That Midland Credit knew or should have reasonably known that the information regarding Plaintiff's account at issue was inaccurate and harmfully misleading.

9

7. That as a direct result of Midland Credit's failure to uphold its statutory duty of providing accurate information, the CRA defendants informed Plaintiff's potential creditors that Plaintiff was at higher risk for nonpayment of debts and was therefore an undesirable credit risk.

8. That as a direct result of Midland Credit's failure, Plaintiff further suffered in the form of personal financial loss and loss of standing in the community.

9. That Plaintiff suffered further harm by incurring legal and professional fees in consulting with various experts regarding the course of action for correcting the errors.

10. That Plaintiff suffered further harm from loss of personal and professional time.

## Facts Regarding FDCPA Violations

1. Midland Credit is, and at all times mentioned herein was, a professional "debt collector" as defined by 15 U.S.C. §1692a(6).

2. That Plaintiff, within the prescribed thirty-day period, upon receiving notice of collection efforts from Midland Credit disputed the validity of the alleged debt by sending a validation letter on September 7, 2021.

3. That Midland Credit never responded and thereby failed to validate the alleged debt at issue, and further, failed to provide any information to Plaintiff verifying that he in fact owed the debt and the accurate amount.

4. That Plaintiff sent a second validation letter to Midland Credit on October 21, 2021.

5. That Midland Credit, again, failed to respond.

6. That despite sending two validation letters, Midland Credit continued its collection efforts in violation of the FDCPA.

7. That despite disputing the alleged debt at issue, Midland Credit failed to inform the CRA defendants that the Plaintiff disputed his debt in violation of the FDCPA.

10

## First Count
## Willful Noncompliance with the FCRA
(Against All Parties)

8. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

9. The CRA defendants all willfully failed to comply with the requirements of FCRA, including but not limited to:

   a. failing to comply with the requirements of Section 607(b), 15 USC § 1681e(b), in assuring consumer reports are prepared with maximum possible accuracy;

   b. failing to comply with the requirements of Section 611, 15 USC § 1681i, in failing to conduct a reinvestigation of the disputed information;

10. Midland Credit willfully failed to comply with the requirements of the FCRA, including but not limited to:

   a. failing to comply with the requirement of Section 623(a) by furnishing information with actual knowledge or with reasonable cause to believe that the information furnished contained errors.

11. As a result of all the Defendants' failure to comply with the requirements of FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, interference with his normal and usual activities, emotional distress, anger, frustration, humiliation, anxiety, fear, worry, and related health problems, for which Plaintiff seeks damages in an amount to be determined by the jury.

12. Plaintiff requests attorney's fees pursuant to 15 USC § 1681n(a).

## Second Count
## Negligent Noncompliance with the FCRA
(Against All Defendants)

13. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

14. The CRA defendants negligently failed to comply with the requirements of the FCRA, including but not limited to:

   a. failing to comply with the requirements of Section 607(b), 15 USC § 1681e(b), in assuring consumer reports are prepared with maximum possible accuracy;

   b. failing to comply with the requirements of Section 611, 15 USC § 1681i, in failing to conduct a reinvestigation of the disputed information;

15. Mainland Credit negligently failed to comply with the requirements of FCRA, including but not limited to:

   a. failing to comply with the requirement of Section 623(a) by furnishing information with actual knowledge or with reasonable cause to believe that the information furnished contained errors.

16. As a result of all the Defendants' failure to comply with the requirements of FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with his normal and usual activities, emotional distress, anger, frustration, humiliation, anxiety, fear, worry, and related health problems, for which Plaintiff seeks damages in an amount to be determined by a jury.

17. Plaintiff requests attorney's fees pursuant to 15 USC § 1681o(a).

## Third Count

### Violation of Fair Debt Collection Practices Act
### (Against Midland Credit)

10. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

11. Midland Credit violated 15 U.S.C. § 1692 e(2), e(8) e(10), f(1), and g(b), by engaging in the aforementioned behaviors.

12. As a result of Midland Credit's violations, pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to actual damages and $1,000 in statutory damages, together with all costs and attorney's fees incurred in bringing this action.

### Jury Demand

13. Plaintiff hereby demands a trial by jury.

### Prayer for Relief

WHEREFORE, Plaintiff, by and through his attorney, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendants as follows:

    a. All actual compensatory damages suffered;

    b. Statutory damages in an amount up to $1,000.00 per violation, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1692k(a)(2)(A);

    c. Injunctive relief prohibiting such conduct in the future;

    d. Reasonable attorney's fees, litigation expenses, and cost of suit; and

    e. Any other relief deemed appropriate by this Honorable Court.

13

Dated: January 10, 2022                   **MINNESOTA LEGAL ASSISTANCE**

*/s/ Joseph Koe*
Joseph Koe (#0397236)
333 S 7th St., #2450
Minneapolis, MN 55402
(612) 412-9503 ext. 712
Joseph.Koe@Madgettlaw.com

ATTORNEY FOR PLAINTIFF

## Acknowledgement

Plaintiff acknowledges that, pursuant to Minn. Stat. Sec. 549.21 sub. 2, the Court in its discretion may award costs, disbursements, reasonable attorney's fees and witness fees to the parties against whom costs, disbursements, reasonable attorney's fees and witness fees were charged in bad faith.

Dated: Janauary 10, 2022						By: /s/ *Joseph Koe*